## COUTHWAY vs. BERGHAUS ET AL.

1. A judgment creditor by confession (if *bona fide*) is entitled to redeem real estate sold under mortgage or execution under the act of 1842; but the purchaser may, at his peril, compel a resort to equity to establish the *bona fides* of the debt.

2. If the bill alleges that complainant was a *bona fide* creditor at the time his judgment was confessed, and an exemplification of the record of the judgment is exhibited showing that it was founded on a note bearing date anterior to the defendant's purchase, the allegation is sufficient, without setting out the particulars of the consideration of the note.

3. If the judgment was confessed before the expiration of the time allowed for redemption, though after the sale, the creditor may redeem.

4. When the purchaser does not deny the existence of the indebtedness on which the judgment was confessed, but professes ignorance of it, and avers that he had offered to pay the amount of the judgment and retain the land, proof by one witness of his confession "that he had satisfied himself that the judgment was good, and that the right to redeem under it existed," is sufficient.

5. Although an agent to make a tender cannot delegate his authority to another, yet he may make the tender by letter sent by the hands of another.

6. If the purchaser only objects to the amount tendered, and declars that he is not satisfied that the complainant is a *bona fide* creditor, he cannot afterwards raise an objection to the authority of the person through whom the tender was made, nor to the fact that the money was tendered in bank notes.

7. Where the legal title is in a naked trustee, who has no interest whatever in the land and is a non-resident, while the *cestui que trust*, who can control the title, is in possession, and in perception of the rents and profits, the tender may be made to the latter.

8. The purchaser has not six months within which to make his election, but must make it within a reasonable time, and must notify the creditor of his election and tender a compliance : merely saying that he will pay the sum bid and retain the land, without offering to pay or securing the payment, amounts to nothing.

9. If the purchaser has extinguished a prior incumbrance on the land, he should be allowed the amount paid by him, with interest.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. J. W. LESESNE.

THIS bill was filed by the appellant, as a judgment creditor of Aaron Gage, to redeem certain lots in the city of Mobile, which had been sold under a mortgage executed by said Gage to one C. W. Dorrance, and purchased by the defendant Berg-

26

haus. The sale under the mortgage was made on the 4th day of June, 1850 ; the complainant's judgment was confessed on the 1st day of July, 1850 ; and the offer to redeem was made on the 3d of June, 1852, and renewed on the next day. At the sale Berghaus became the purchaser, but took the deed in the name of his sister Mrs. Kline, who was a resident of the State of Pennsylvania, and who is made a defendant with him. The chancellor dismissed the bill, holding "that a judgment confessed, without further proof of indebtedness, does not constitute a party a *bona fide* creditor under the redemption law of 1842, so as to entitle him to redeem ;" and his decree is now assigned for error. The several points in the case are very fully presented by the briefs and opinion.

K. B. SEWALL, for the appellant :

1. The point on which the case was made to turn by the chancellor could not arise upon demurrer to the bill, and it did not arise on the issue made by the pleadings. The complainant made no allegations respecting any transactions with Gage, but simply set out her judgment and execution, referred to the exhibit as proof, and alleged that the judgment remained in full force. The defendant, in his answer, professed a want of knowledge as to the transactions between complainant and Gage, (which were not alluded to in the bill,) and then said "that the paper purporting to be a transcript of the judgment is not, as he is advised, properly authenticated, and therefore he prays that complainant may be held to strict proof of all her allegations touching the same." The answer, then, at most, put in issue the existence or proof of the judgment ; and when the complainant, on the hearing, read in evidence an exemplification of the judgment, execution, and return, properly authenticated, she made strict proof of all her allegations. To require further evidence of indebtedness, therefore, was to require proof of what was neither alleged nor in issue, contrary to the universal rule which demands that the evidence must correspond with the allegations and be confined to the point in issue. It was a surprise which the complainant could not anticipate, and therefore had no opportunity to meet ; the proceedings should have been suspended, under the views entertained by the court, that the

Couthway v. Berghaus et al.

parties might take further proof.—Lamb v. Gatlin, 2 Dev. & Bat. Eq. 27.

2. But if the answer had impeached the judgment for fraud, and put in issue the *bona fides* of the debt, yet this would not have required the complainant to prove anything more than her judgment, execution, and return; for " fraud is never to be presumed, but must always be established by proof," and " *res judicata pro veritate accipitur.*"—3 Greenl. Ev., § 254; Co. Litt. 103. It was incumbent on the defendant to offer some evidence to overcome the presumption of the *res judicata*, but he offered none ; on the contrary, there was evidence of his own admission (to Barkaloo) of the complainant's debt.

3. But these considerations, which really dispose of the case, were wholly overlooked by the chancellor, and the decision placed on the insufficiency of a judgment by confession, without further proof, to entitle a person to redeem under the act of 1842. The question then arises, Is this a correct statement of the law, and is it sustained by authority ? The chancellor, while admitting that the precise point has not been adjudicated, thought it had been " anticipated" in Thomason v. Scales, 12 Ala. 309, because the opinion in that case speaks of a "contestation." But the whole inquiry in that case was, as to the meaning of the term " *bona fide* creditors ;" and the conclusion of the court (p. 315) is simply, " that the creditors spoken of in the statute are judgment creditors, and that no others are entitled to its privileges." Of Hooper v. Pair, 3 Porter 401, (if it can be considered law,) and Lamb v. Gatlin, 2 Dev. & Bat. Eq. 37, it is enough to say that they are not in point. In the only other cases cited (1 Cow. 443, 501) the judgments were by confession, without other proof, and the right of such a creditor to redeem was sustained as unquestionable. The Code does not purport to give a construction to the act of 1842, but repeals it, and adopts a provision on the subject materially different ; and the fact of this change, excluding judgments by confession, is evidence that the prior statute, in the view of the Legislature, could not have that effect. But if the Code had expressly declared, that the act of 1842 should be construed to exclude from its privileges creditors who held judgments by confession, such a declaration would be beyond the constitutional power of the Legislature,

and would not have been sanctioned by the courts.—1 Kent's Com. 503. It was not even a case of doubtful construction ; the decision in Thomason v. Scales, *supra*, had become incorporated in the act, and settled beyond doubt or construction the meaning of "*bona fide* creditors." Although the precise point has not been adjudicated in this State, yet in Pollard v. Taylor, 13 Ala. 608, the right of a creditor whose judgment is by confession to redeem under the act is admitted as unquestionable. This case is not cited as an authority in point, because it was not the point in the case, but as conforming to the decisions in 1 Cowen, *supra*, and showing the effect conceded to the judgments of all competent legal tribunals. The case of Reed v. Davis, 5 Pick. 388, is directly in point.— There the demandant in a real action, as evidence of his right, produced a judgment *by default* against one Bernard, and a promissory note on which it was founded, but no evidence of the consideration of the note ; and impeached the deed under which the defendant held possession as being fraudulent as against Bernard's creditors. The tenant contended, that, as he held under a deed which was valid as to all persons except *bona fide* creditors of Bernard, the *onus* was on the demandant to prove himself a *bona fide* creditor, and that the note and judgment by default, without further proof that the note was given for a *bona fide* consideration, was not sufficient to establish that fact; but the court held, "that the note and judgment thereon were *prima facie* evidence that the demandant was a *bona fide* creditor of Bernard." A judgment by default stands on no higher ground than a judgment by confession, since it is but an implied confession of the cause of action alleged. The present, however, is a stronger case than the one just cited. Here, the judgment was founded on a promissory note, which, by statute, is made *evidence* of the debt for which it was given, and its execution can only be denied by a sworn plea : it was, therefore, founded on the highest evidence of legal liability admitted in our courts, and is consequently conclusive evidence that complainant was a *bona fide* creditor.

4. There is nothing in the object of the act of 1842, nor in the rights of the purchaser, which requires that the rule laid down in Thomason v. Scales, *supra*, should be further limited or restricted. The act was intended "to prevent the sacrifice

of real estate," and should be liberally construed.—Pollard v. Taylor, 13 Ala. 607. The purchaser knows that he gets a defeasible estate, of which he may be deprived within two years ; but in that event he gets back his purchase money, with liberal interest, his "lawful charges," and "needful improvements." He is not surprised by an offer to redeem, nor injured by a redemption.

5. There is nothing in the nature or forms of judgments which, of itself, creates a distinction between them as to their effect. In whatever form they may be rendered—whether by default, confession, on demurrer, or on verdict—no distinction was recognized, as to their conclusiveness and effect, either by the common or civil law. A judgment by confession is as old as the law itself, and has never been discouraged, nor regarded with suspicion.—Pand. D., 42, 2 pr. 6 ; C. 7, 59, 1 ; Dom. p. 828.

6. There is no reasonable ground for a distinction, founded on the mode in which judgments are obtained. Fraud or collusion between the parties may be as easily practiced, when the judgment is on demurrer, *nil dicit, non sum informatus,* or by default, as when obtained by confession. No form is, in itself, a protection against fraud ; and it should not, therefore, be made the criterion of the *bona fides* of the debt which it represents.

7. It is said that the judgment is *res inter alios acta,* and therefore not conclusive on Berghaus. The same objection would apply equally if the judgment were on verdict ; and no creditor would then be entitled to redeem without further proof of indebtedness, unless the purchaser was party or privy to the judgment. But the rule as to *res inter alios acta* does not apply to the case : a judgment is always admissible to prove the fact that it was rendered, and it is conclusive against the purchaser unless impeached on the ground of fraud or collusion.—1 Greenl. Ev. §§ 538, 539 ; 1 Stark. Ev. 295–6.

8. The objection that Adams and Barkaloo were not authorized to make the tender, because Chamberlain could not delegate his authority, cannot avail. The tender was made on behalf of the complainant, through her authorized agent, and she has since ratified and confirmed his acts : this is sufficient.—Story on Agency, §§ 244, 249 ; Goodtitle v.

Woodward, 3 B. & Ald. 689 ; Alderson v. Harris, 12 Ala. R. 580 ; Everett v. United States, 6 Port. 166.

9. The objection that most of the money tendered was in bank notes was not made at the time of the tender, and therefore cannot be made now.—Sewall v. Henry, 6 Ala. 226.

HOPKINS, JONES & LOMAX, for the appellee :

1. It has been held by this court, in construing this redemption law, and by other courts construing similar laws, that " the terms prescribed by the statute must be strictly pursued, to entitle the creditor to redeem."—Barringer *et al.* v. Burke, 21 Ala. 771, and other cases cited below.

2. The statute says, a *bona fide* creditor may redeem. It was necessary, then, for Mrs. Couthway to show by her bill, and by her proof, that she was a *bona fide* creditor. It is submitted that it is not sufficient for her to allege, in general terms, that she was a *bona fide* creditor : she should show the particular ·facts which constitute her a *bona fide* creditor. How did she become a creditor ? Was it by selling property to Gage ? or by lending money to him ? or how ? She no where shows how, or by what means, she became a creditor. The only allegation in the bill on this point is: " That on the first day of July, 1850, your oratrix, by the consideration of the City Court of Mobile, recovered a judgment against Aaron Gage, being a *bona fide* creditor, for the sum of eleven hundred and thirty six dollars and sixty-six cents," &c., and in looking at the transcript of the judgment, it appears to be a judgment by confession ; and it is to be further remarked, that she does not allege that she was a creditor of Gage, until after Berghaus' purchase. On these grounds, the bill was fatally bad on the demurrer which was interposed.

3. But as against Berghaus, who was not a party to the suit against Gage, a judgment by confession is no evidence of Mrs. Couthway being a *bona fide* creditor. In this respect, the judgment by confession, however binding it may be as between the parties to it, is no evidence of *bona fides* as against third persons. If so, all that a debtor, whose property has been sold under execution or mortgage, need do, is, after the sale (as in this case) to go into court and confess judgment in favor of his mother-in-law, or some other confidential friend,

and such friend can then come foward, and without making any other allegation or showing of being a *bona fide* creditor, may redeem the land, and thus not only deprive the purchaser of the benefit of his bargain, but other creditors of the right of redeeming. Such a door for fraud ought not to be opened. This court, by its previous decisions, has sufficiently settled the law on this point. In the case of Thomason v. Scales, 12 Ala. 309, this court decided, that none but a judgment creditor can redeem,—none but a judgment creditor is to be deemed a *bona fide* creditor within the terms of the act ; and the court says (12 Ala. 312) : " that in prefixing the emphatic term *bona fide*, such an ascertained claim as the law presumes to be *bona fide* was intended, because it is ascertained 'to be due by the judgment of a court, after a contestation." This was the construction put by the judiciary on this act ; and it has been expressly approved by the court in subsequent cases, especially in Barringer v. Burke, 21 Ala. 771.

The framers of the new Code have embodied this idea in the Code (Code of Ala., § 2120) ; and the Legislature has, by adopting the Code, expressed its concurrence in this construction. The language of that section of the Code is : "All judgment creditors of the debtor," &c., "except by confession of the debtor, may in like manner redeem," &c. This is but expressing in more explicit terms, as it was the duty of the codifiers to do, what the courts had held to be the true construction of the law. But it had been previously held by this court in Hooper v. Pair, 3 Port. 401–404, that a judgment by confession, or default, was no evidence against a third person that the defendant was indebted to the plaintiff at the time it was rendered. The same principle is laid down in respect to a decree by *confession, in Lamb v. Gatlin, 2 Dev. & Bat. Eq. R. 37. On precisely the same principle, this court has repeatedly decided, that recitals of consideration in a deed, or a statement of the indebtedness of a grantor in a deed of trust, in notes, or otherwise, is no evidence of *bona fides*, as against third persons.—McCain v. Wood, 4 Ala. 258; Br. B'k at Decatur v. Kinsey, 5 *ib*. 9. The confession of judgment by Gage, made after Berghaus' purchase, was certainly no evidence against Berghaus.—Goodgame v. Cole, 12 Ala. 77, 81. There was, then, not only no such allegation as

we insist was necessary, but no legal proof at all that Mrs. Couthway was a *bona fide* creditor of Gage. It was on this clear ground that the chancellor dismissed the bill.

4. There are other grounds on which the decree dismissing the bill can be sustained. We have seen that the creditor, to entitle himself to redeem, must bring himself strictly within the terms of the act. The whole tenor of the law shows, that it only intended to give the right of redemption to an existing creditor, one who was a creditor, either absolutely or contingently, at the time of the sale. One who becomes a creditor subsequently to the sale has no such right. If this be so, it is indispensably necessary that the creditor should allege in his bill that he was a creditor, absolutely or contingently, at the time of the sale. No such allegation is made in this bill. It would be fatally defective, on demurrer, for the want of such an allegation. But there is not only no such allegation, but on the contrary the bill itself expressly alleges that the sale was made to Berghaus on the 4th of June, 1850, and that the plaintiff became a creditor of Gage on the 1st of July, 1850, nearly a month after the purchase by Berghaus. The case of Pollard v. Taylor, 13 Ala. 604, is not in conflict with this view, but rather sustains it; for there the debt against Ball, under which the redemption was allowed, existed before the sale, and Taylor, as accommodation acceptor, was considered as subrogated to the rights of the holder of the bill.

5. The statute requires the offer to redeem, and the tender, to be made by the creditor. Certainly a stranger cannot make it. It may be conceded that, though the statute does not in terms authorize the offer to be made by the agent or attorney of the creditor, yet it may be made by the agent or attorney. Certainly the purchaser, when the offer is not made by the creditor in person, has a right to call for and see the authority of one making the offer professedly as the agent of the creditor. Now, in this case, the offer was not made by Mrs. Couthway, in her own proper person, nor by her agent or attorney : the evidence shows that she was then absent from the State ; but she had executed a power of attorney to Henry Chamberlain, authorizing him, as her attorney, to make the offer, but not authorizing him to substitute or ap-

point any other person. Now the offer was not made by Chamberlain, but by Mr. Adams, at Chamberlain's request. The maxim is, " *delegatus non potest delegare.*" Chamberlain could not appoint Adams in his stead ; and so the tender and offer to redeem was not made by Mrs. Couthway, or her agent or attorney.

6. The offer to redeem was not made to the proper person. At the sale by the master, the property was bid off by Berghaus, and he paid for it ; but being indebted to his sister, Mrs. Kline, for the purpose of securing her, the deed was made by the master, Parker, not to Berghaus, but to Mrs. Kline. The legal title was thereby vested in Mrs. Kline, and, so far as appears by this record, is still in her. It may be true that, in equity, it is Berghaus' property. At the time the offer to redeem was made, the plaintiff knew the legal title was in Mrs. Kline ; she did not know in whom the equitable title was. The fair presumption was, that the whole title was in Mrs. Kline. Certainly an offer to redeem, made to Mrs. Kline, would have been proper and sufficient. That point was expressly decided in Barringer v. Burke, 21 Ala. 765. The offer to the trustee is sufficient. The question whether such an offer to the *cestui que trust* is sufficient, is stated in that case, but not decided by the court. It is obvious, however, that no person but one holding the legal title, can possibly comply with the offer ; and it seems to follow as a necessary consequence, that the offer to the *cestui que trust* will not do.

7. The offer to redeem was not only made by the wrong person, and to the wrong person, but the manner of it was wrong also. Mr. Adams states, in his deposition, that he had with him, at the time he made the offer, $6700 in bank notes. He says, that when he made the offer to redeem, Berghaus said he was not satisfied Mrs. Couthway was a creditor of Gage, and said, in general terms, that the amount offered was not sufficient ; Berghaus declined counting the money when Adams produced it; did not object to its being in bank notes; he used the expression, "you may consider it a tender; I do not." No matter how Mr. Adams may have understood this expression, it is submitted that its only fair interpretation is, that he did not consider the bank notes a good tender ;

and no legal tender was made. Adams no where states (nor any other witness) that when Berghaus was called in to convey the land, it was proposed he should do it at Mrs. Couthway's cost. He was not asked to convey in his own name, but in Mrs. Kline's name.

8. By the statute, rights are reserved to the purchaser. It is held by this court, that he has a right to call for evidence that the party offering to redeem is such a creditor as has a right to redeem. This requires some time for examination. He is not bound to re-convey absolutely; he has a right of election, either to re-convey, or to "pay or secure to be paid, within six months," to the creditor offering to redeem, the sum proposed to be advanced by him. Certainly the purchaser is to have a reasonable time, at least, to make this election. By the punctuation and grammatical construction of the statute, it gives him six months within which to make this election. Two days afterwards Berghaus offered to pay $1250 to Mrs. Couthway and keep the property. This offer was first made the 5th of June, 1852, and repeated on the 7th of June. It was within a few dollars of the whole amount of her judgment and interest, but was not accepted. This refusal was in violation of Berghaus' rights. There is nothing in the statute which requires the purchaser to make this election *instanter*, or within two years after his purchase. He made his election in two days, (that certainly was within a reasonable time,) and notified his election. Then the plaintiff had no right to file her bill, as she did, before the expiration of the six months.

CHILTON, C. J.—In Thomason v. Scales, 12 Ala. 309, it was held, that to entitle the creditor to redeem the land of his debtor under the act of 1842, "to prevent the sacrifice of real estate," he must have ascertained the *bona fides* of his demand by obtaining a judgment. A judgment was obtained by the appellant in this case against Gage, her alleged debtor; but it was by his confession; and the question is, was this such a judicial ascertainment of the debt, as authorized her to demand a redemption.

It is argued that, if such right may be claimed under a judgment of this character, a wide door would be opened for

fraud and collusion; and that to constitute a *bona fide* creditor, there must be a judgment after a contestation. Perhaps it would be impossible, after the greatest circumspection and caution, effectually to provide against fraud in all cases. Were we to hold that the record of the judgment must show a contest between the parties, even then such contest might be feigned or collusive. And what evidence will suffice to show such contest? a demurrer, or plea, or judgment on the verdict of a jury? Every one knows the record may so speak, and yet the judgment be rendered upon a colorable or fraudulent demand. The parties may have so arranged as to build up the demand, and to invest it with these apparent solemnities, as a better shield against the exposure of their fraud. It is very apparent then, that the evidence which a record would ordinarily furnish of a contest, would afford very little additional proof of the *bona fides* of a demand, beyond what a judgment by confession would exhibit; both are conclusive as against a defendant in the judgment, but neither of them has this effect as against third persons who are strangers to it. They are alike conclusive evidence that such judgments exist; but whether founded on a *bona fide* claim—in other words, whether they are not fraudulent as against third persons, is a question which strangers may discuss.

The annotators upon Phillips' Evidence (vol. 3, pp. 820, 821) have clearly stated the distinction which we wish to illustrate. "A verdict or judgment," they say, "is offered, either to establish *the mere fact of its own rendition, and those legal consequences which result from the fact;* or it is offered with a view to a collateral purpose,—that is, to prove not only the fact that such verdict or judgment has been rendered, and so let in all the legal consequences; *but as a medium of proving some fact as found by the verdict, or upon whose supposed existence the judgment is based."* For the first named purpose, that is, to prove the judgment itself *as a fact and its legal consequences,* the record of it is admissible against strangers, but not as proof of any fact on which it is based. See, also, Phillips' Ev., (C. & H. notes,) vol. 3, pp. 821,-2,-3, notes 582,-3.

The appellant being a judgment creditor of Gage, one of the consequences resulting from the judgment is, that she is

entitled, by reason of this record evidence, to make applica-
tion to redeem his lands, which are subject to redemption ;
and if the appellee, seeing that Gage is concluded by the
judgment, is unwilling to repose upon this record evidence,
he may put the complainant upon the proof of the existence
and *bona fides* of her demand,—may, at his peril, refuse to
yield to it, and compel her to resort to chancery, where he
can contest with her the justness of her claim. We think we
might, with the same propriety, and for equally strong rea-
sons, hold that a judgment by confession or default consti-
tutes no lien,—that a plaintiff in an execution issued upon
it should not be permitted to try the right to property so as
to subject it for its satisfaction ; or that, upon a return of "no
property found," the plaintiff might not resort to equity to
subject the equitable estate of the debtor in the hands of a
trustee. It does not follow, however, that because Mrs.
Couthway has a judgment, which she must have before she
can redeem, she is a *bona fide* creditor. The statute (Clay's
Digest, 502,-3) does not confer the right of redemption upon
judgment creditors merely : they must be *bona fide* creditors
who have judgments. The reasons, in part, no doubt, upon
which the courts have held a judgment was necessary, were
to cut off disputes and uncertainty as to the amount which
the debtor owed to the creditor, and to protect the latter
from having his own right to redeem embarrassed by claims
which he never acknowledged. Be this as it may, we think
the fact that the judgment was confessed does not cut off the
appellant's right to redeem.

The case of Hooper v. Pair, in 3 Port. 401, is not opposed
to the views we have expressed. The claimant, it was very
properly held in that case, could not controvert the *bona fides*
of the judgment of the plaintiff in execution, because such
contest was without the issue; and as to the judgment under
which the claimant made title, it was held no evidence of the
existence of a demand against the defendant in execution in
favor of the claimant, as the plaintiff in execution was
neither a party nor privy to it. True, some stress is laid by
the learned judge who delivered the opinion upon the fact,
that it was by default, &c.; but we apprehend the same re-
sult would have followed, however much it had been con-

tested, as the plaintiff in execution should not have been held bound by a contest to which he was a total stranger.

But it is insisted by the counsel for the appellee, that the bill is defective, in that it fails to show when the debt accrued, or that the complainant was a *bona fide* creditor when Berghaus bought the land. The charge is, that "on the first day of July, 1850, oratrix, by the consideration of the City Court of Mobile, recovered a judgment against Aaron Gage, being a *bona fide* creditor, for the sum of eleven hundred and thirty-six dollars and sixty-six cents," &c ; and an exemplification of the record of recovery is set forth as an exhibit to the bill, from which it appears that the judgment was on a note bearing date anterior to the purchase by the appellee.— This, though not very formal, we think is sufficient. It is not necessary that the complainant should go into the particulars of the consideration of the note upon which the judgment was founded. The charge that it is a *bona fide* indebtedness, with an exhibit of the evidence of it, is all that is required. If *bona fide*, it existed when the evidence of the demand was given, and this was before the sale.

That the judgment was obtained after the sale, but before the expiration of the time for redeeming, as fixed by the statute, was held, in Pollard v. Taylor, 13 Ala. 604, to be sufficient to authorize such creditor to redeem.

But, the counsel for the appellees say, the judgment not being evidence of a *bona fide* claim or demand, there is no proof in the record to show that Mrs. Couthway was a *bona fide* creditor. The proof of this fact is found in the admission of Berghaus to Barkaloo, on the 4th of June, 1852, that "he had satisfied himself that the judgment was good, and the right to redeem under it existed." The answer does not directly deny indebtedness on the part of Gage to Mrs. Couthway, but merely that the respondent is ignorant respecting it. The feeble denials of the answer, weakened as it is by partial concessions of the right to redeem, and the averment that the defendant offered to pay the amount of complainant's judgment, coupled with the proof made by Barkaloo, we think sufficient to justify the conclusion that the demand exists as it appears of record, and to dispense with the necessity for further proof.

Again ; objection is made to the tender, first, because it was not made by the proper person. It is said the appellant herself, or Chamberlain, her attorney in fact, should have made it ; whereas it was made by one Adams. We recognize fully the rule, that an agent, without authority given him by his constituent in that behalf, cannot delegate his authority and powers to another. But this does not imply that Chamberlain must carry the money, instead of sending it, or that he, instead of some one else, must count down the money. The tender was substantially made by Chamberlain, through his letter to Berghaus, borne by Adams, who took the money and offered it to him ; and it is clear from the record that the appellee so understood it ; for he had an interview, and also wrote to Mr. Chamberlain in regard to it, recognizing him as the actor in the matter. Besides, he made no objection to the want of authority in Mr. Adams at the time. His reasons for declining the redemption were, that the amount tendered ($6700) was not enough, and that he was not satisfied that Mrs. Couthway was a *bona fide* creditor. It would be unjust to allow him to spring other objections afterwards, which could readily have been remedied at the time, and doubtless would have been but for the implied waiver. It is upon the same principle that the tender of bank notes is sufficient, unless objection be made to them for that reason.— In this case, no specific objection of the kind was made, and the party might fairly imply that the same was waived.

It is further urged by the counsel for the appellee, that the tender was made to the wrong person—that it should have been made to Mrs. Kline. It is admitted, that she was a mere trustee, without any interest in the land, and that she holds the title to the same for Berghaus, who has the possession, and is in perception of the rents and profits, and can control the title. Under these circumstances, she being a non-resident, we think it clear the appellant was not bound to go to her place of residence, at a great distance beyond the State, to make a tender to her. The money was not due to her, but to the party who paid it, and to whom the tender was made. It appears that the appellant was content to receive the conveyance from him as her agent, which agency he did not then deny ; and it did not lie with him to say, I have

caused the legal title to be lodged in a person a thousand miles distant, it may be; you must search for her and get the title, or you cannot redeem. If such embarrassments could be thrown in the way of redemption, it would be rendered, in many cases, useless ; and as the land, by reason of this statute, generally sells for less at the first sale than it would otherwise command, that which the act was designed to prevent—the sacrifice of it—would be the result.

As to the objection, that it was not proposed that the conveyance upon redeeming was to be at Mrs. Couthway's cost, it is only necessary to say, that Mr. Adams proves the conveyance was to be furnished by him, he acting at the request of Mr. Chamberlain.

It is further argued by the appellee's counsel, that he had six months, after the tender, to make his election whether to convey or pay the sum offered to be credited by the appellant, and that the bill was prematurely filed before the expiration of that period. Such is not the proper construction of the statute. His election must be made in a reasonable time, and he must notify the opposite party of his determination and tender a compliance. Merely saying that he should pay the sum bid and retain the land, without offering to pay, or securing it as required by the statute, amounts to nothing.— But if he had made a tender, he does not continue it in his answer, but seeks to bar the complainant's right, leaving the land as it was.

Whether the amount tendered was sufficient to refund the purchase money, with the per cent. allowed by law, and whether the rents and profits will leave a balance due for improvements, are questions which can be settled upon a reference. The amount which the appellee paid to extinguish the incumbrance of Stewart & Easton, with lawful interest, should be refunded him, as on the payment he became subrogated to the rights of the mortgagees, and should not be divested of the lien, if it constituted a prior incumbrance, without being refunded the amount paid and interest.

Upon the case presented, we think the decree of the chancellor erroneous ; it is consequently reversed, and the cause will be remanded, that a decree may be rendered in conformity with the views expressed in this opinion.