(93 South. 818)

### RAWLS v. CARLISLE & BASTON.
#### (4 Div. 714.)

(Court of Appeals of Alabama. Nov. 15, 1921. Rehearing Denied April 11, 1922. Reversed on Mandate of Supreme Court Oct. 24, 1922.)

1. **Brokers ⬡18—Real estate broker entitled to commission where sale was brought about by subagent, whether known to principal or not.**

While the agency of a real estate broker, where judgment is required in negotiating the transaction, is nondelegable, a real estate broker, who employs subagents to aid in procuring a purchaser for lands listed with him for sale, is entitled to commissions, where the sale is brought about and consummated, according to the terms agreed upon, with the assistance of a subagent, whether the subagency was known to the principal or not.

2. **Brokers ⬡86(1)—Evidence as to employment of subagent held admissible.**

In an action for commissions under a contract to find and produce a purchaser, evidence by one of the plaintiffs that he had employed a subagent to assist in procuring a purchaser was admissible.

3. **Brokers ⬡57(2)—Real estate broker, who was procuring cause of sale, is entitled to commission, though sale was effected by owner.**

Where under a contract to procure a purchaser for land on terms therein named, brokers were instrumental in sending the purchaser to defendant, they are entitled to commission, though the sale was effected by the owner on terms approximating those named in the contract, without knowledge that plaintiffs were instrumental in sending the purchaser to him.

Appeal from Circuit Court, Coffee County; A. B. Foster, Judge.

Action in assumpsit by Carlisle & Baston against J. Rawls to recover broker's commissions. From a judgment for plaintiffs defendant appeals. Affirmed. See, also, 93 South. 820.

Assignments of error 1 and 2 are as follows:

"(1) The court erred in overruling appellant's objection to the following questions propounded by the plaintiff's counsel to the witness C. W. Baston: 'After that, did you make a contract with anybody or hire anybody to work for your firm in the execution of the contract?' "

"(2) The court erred in overruling appellant's motion to exclude the answer of the witness, 'Yes, sir,' to said question."

W. W. Sanders, of Elba, and C. W. Simmons, of Enterprise, for appellant.

The fact that the transaction which the broker was authorized to negotiate is finally consummated does not of itself entitle the broker to a commission. He must have been the procuring cause of the transaction; else no compensation is due. 79 South. 154; 162 Ala. 432, 50 South. 377; 181 Iowa, 210, 164 N. W. 335, 1 A. L. R. 523; 9 C. J. 611. The broker must notify the principal when he has found a customer, and of the offer made by him; else he is not entitled to a commission. 200 Ala. 666, 77 South. 40; 9 C. J. 615.

J. C. Yarbrough and J. C. Fleming, both of Enterprise, and Sollie & Sollie, of Ozark, for appellees.

Under the simple contract between plaintiffs and defendant, whereby the former undertook to procure for the latter a purchaser of the lands in question at a given price, the broker is entitled to the agreed compensation if and when he finds a purchaser able and willing to pay the price named, and brings him and the owner together; and this is true where the sale is made by the owner on a slight difference in the terms. 196 Ala. 417, 72 South. 89; 203 Ala. 191, 82 South. 441; 162 Ala. 458, 50 South. 187; 157 Ala. 572, 47 South. 1031; 177 Ala. 636, 59 South. 286; 16 Ala. App. 480, 79 South. 154; 86 Ala. 146, 5 South. 473; 195 Ala. 203, 70 South. 637; 84 Ala. 99, 4 South. 180; 2 Ala. App. 378, 57 South. 79; 1 Ala. App. 556, 55 South. 542. The authority given by defendant to the plaintiffs was delegable by plaintiffs to a subagent. 71 Ala. 271; 50 Ala. 347; 25 Ala. 393; 83 Ala. 384, 3 South. 715; 161 Iowa, 613, 143 N. W. 591, Ann. Cas. 1915D, 1; 1 A. & E. Ency. Law, 977; 2 C. J. 689; 21 R. C. L. 861; 66 Conn. 465, 34 Atl. 107, 50 Am. St. Rep. 104; 50 W. Va. 148, 40 S. E. 398, 88 Am. St. Rep. 849.

———

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

SAMFORD, J. The plaintiffs in the court below (appellee here) entered into an agreement with defendant (appellant here) whereby plaintiff undertook to endeavor to find a purchaser for lands belonging to defendant at a price named at $25,000, which defendant was offering for sale, for which service plaintiff was to receive a certain commission, on the consummation of a sale of the property to a purchaser furnished by plaintiff. But there was no evidence or contention that plaintiffs were given the exclusive agency to sell said lands or to find a purchaser therefor. In other words, the lands of defendant were listed with plaintiffs as real estate agents for sale at an agreed commission, the contract being entirely informal and verbal. The plaintiffs, in furtherance of their part of the agreement, employed one Bell to assist them in finding a purchaser, agreeing to give Bell a part of the commission to be due them in case they brought about a sale. Of this last agreement the defendant knew nothing, and was not a party to it, but there is testimony to the effect that defendant knew Bell was being employed by plaintiffs in the procuring a purchaser for the land. It is also in evidence that Bell approached Warren, who finally purchased the land, with reference to its purchase, and that Bell told Warren to go to see J. P. Rawls, defendant's son, but as to whether Warren went as a result of this conversation witness did not know. Warren, the purchaser, examined as a witness by plaintiff, testified that, while he did go to see J. P. Rawls, it was not at the request or solicitation of Bell. Warren further testified:

"Bell just happened down there at my shop one day, and said something about having some lands for sale, and I don't know how it came up, but I was busy, but I asked him what lands it was, and he mentioned about Capt. Rawls' place, and I told him I might be interested if I could trade him some town property, that two-story building down there. The next thing that happened, Bell told me that he went to see Capt. Rawls that evening to see if he would trade for it. I saw Bell later the same day, and he said the captain said he would not be interested in it. A day or two later I struck Capt. Rawls on the street and mentioned it to him, and he still said that he wasn't interested in it."

After that Warren, without further solicitation from plaintiffs or Bell, opened negotiations with Capt. Rawls, the defendant, through Jesse Rawls, defendant's son, and finally acquired the property through an exchange of the two-story store and a payment of the difference in money. It nowhere appears that Bell ever presented Warren to Rawls as a prospective purchaser of the land, ready, willing, and able to buy and pay for the land upon substantially the terms agreed upon between plaintiffs and defendant, to wit a cash sale at $25,000. What we mean by "not presented" in this case is: Warren was not introduced to Rawls as a prospective purchaser, either actually or by information given.

[1] It may be laid down as a rule in this state that, while the agency of a broker to dispose of property, where judgment is required in negotiating the transaction, is nondelegable, a real estate broker, who employs subagencies to aid him in procuring a purchaser for lands listed with him for sale, cannot be defeated of the agreed commissions, when the sale is brought about and consummated to the entire satisfaction of the principal and according to the terms agreed upon, with the assistance of a subagent employed for that purpose, whether the fact of the subagency was ever known to the principal or not. The matter of the employment of the subagent between the broker and the subagent, and the broker being responsible to the principal, the maxim applies to the employment of substitutes, and not to the use of subordinates. Burns v. Campbell, 71 Ala. 271; Couthway v. Berghaus, 25 Ala. 393; Drum v. Harrison, 83 Ala. 384, 3 South. 715, 4 R. C. L. 260.

[2] The authority given to plaintiffs under the agreement was simply to find and produce a purchaser for defendant's land, ready, willing, and able to pay plaintiff $25,000. All negotiations requiring judgment were reserved in defendant. The court was not in error in its rulings as to the evidence as noted under assignments 1 and 2.

[3] The important question in this case, as viewed by this court, is: In the absence of information on the part of defendant that Warren was presenting himself as a prospective purchaser, as a result of the efforts of plaintiffs or their subordinates, under facts where plaintiffs did not have exclusive rights to sell or to procure a purchaser, and without such information, defendant consummates a trade and sale of the property, approximating the terms named in the agreement of employment. Can plaintiffs recover commissions under an agreement to procure a purchaser for defendant's property, ready, willing, and able to purchase on terms named in the agreement? And this we confess is not without difficulty, as the authorities coming to our knowledge are in hopeless conflict.

This court, following the decisions of the Supreme Court on the question, has held:

"A broker, having procured a purchaser ready, willing, and able to purchase the property upon terms satisfactory to the owner, was entitled to be paid the agreed commission." Underwood v. Duskin et al., 17 Ala. App. 543, 85 South. 845.

The foregoing is in line with the authorities in this state, and with the great weight of authority in other jurisdictions.

It is also held to be the law that:

"Whether the broker is to introduce a customer or to find or procure one, or whether he is to do these things combined, his duties remain practically the same, as the words 'introduce,' 'find,' and procure are generally used synonymously in making such contracts." 4 R. C. L. p. 304; Platt v. Johr, 9 Ind. App. 58, 36 N. E. 294.

So, where the real estate agent has been the "procuring cause" of the sale, he is entitled to his commissions even though the sale and negotiations are effected by the owner. Hoadley v. Savings Bank of Danbury, 71 Conn. 599, 42 Atl. 667, 44 L. R. A. 321, and notes in which are collated an unbroken line of decisions to the same effect. And this though the owner of the land did not know the facts at the time he made the sale. Graves et al. v. Bains et al., 78 Tex. 92, 14 S. W. 256; Stewart v. Mather, 32 Wis. 344; Sussdorff v. Schmidt, 55 N. Y. 319; Lloyd v. Matthews, 51 N. Y. 124. Notes to Quist v. Goodfellow, 8 L. R. A. (N. S.) 153. The foregoing rule is quoted with approval in Handley v. Shaffer, 177 Ala. 637–652, 59 South. 286. And this rule, says the text in 4 R. C. L. p. 321, is supported by the weight of authority. In the recent case of Dancy et al. v. Baker, 206 Ala. 236, 89 South. 590, where negotiations were begun by a broker at a price named of $150,000, and broken off, and subsequent negotiations afterwards, direct with the principals, resulted in a sale for $130,000, it was held to be the duty of the broker to notify the principals of his continued efforts to entitle him to recover, but in the same case the rule stated in Handley v. Shaffer, supra, is reaffirmed. Under the authorities we are driven to the conclusion that the rulings of the trial court were without error, and, there being no error in the record, the judgment is affirmed.

Affirmed.