Appellants, Thomas and Anthi Mellos, appeal the trial court's order awarding a broker's commission to appellees, Joel Silverman and Associates Realty, Inc., pursuant to an exclusive listing contract for the sale of certain realty and improvements owned by appellants.
On November 15, 1976, appellants entered into an agreement with appellee Associates Realty, Inc. (Associates) whereby Associates was given the exclusive right to sell the Embers Restaurant and Bamboo Lounge owned by appellants. The period covered by the agreement extended to March 1, 1977. The agreement gave Associates an exclusive right to sell the property and provided for a ten percent commission in the event the property was sold at the price authorized in the listing agreement or at any other price agreed to by Mellos. The agreement authorized a sales price of $450,000 with $100,000 down and the balance at 9% simple interest over a 10-year term. The agreement also contained an extension clause which provided:
 In the event of said premises being sold or leased by me or any other person during the term of this agency or a sale or lease is later consummated with prospect introduced or interested in said property during such term by The Associates Realty, Inc., the commission above specified shall be considered earned.
During the term of the listing agreement, Nikola Nikolic became interested in purchasing the property. On Friday night, February 4, 1977, he went to the Embers and inquired of Thomas Mellos if the property was for sale and expressed an interest in purchasing the property. Mellos replied that he was too busy to discuss the matter at that time and to come back the next day. The following day Nikolic went instead to see Joel Silverman with whom the Embers had been listed prior to the agreement with Associates. Nikolic testified he had previously learned from Silverman that the property was for sale and consulted Silverman to get his opinion of the property and its value.
Silverman assisted Nikolic in preparing a written offer for the property, and since his listing had expired, obtained permission from Associates to present the offer to appellants. Silverman presented the offer to Mellos in the presence of his attorney at the Embers on February 9, 1977. The terms of the offer included a sales price of $300,000 with $100,000 down and the balance over a 20-year term at 7%. Appellants rejected the offer and made a counter-offer of $350,000 with $95,000 down and the balance over 20 years at 7%. The counter-offer was rejected. Nikolic then informed Silverman that he was no longer interested in the property. Both the offer and counter-offer provided that Silverman and Associates would split the commission.
The testimony is conflicting as to further contact between Nikolic and Silverman. Silverman asserts that he continued to contact Nikolic until the end of February, a period of about three weeks, hoping to convince him to talk to Mellos again. Silverman testified that he finally concluded that Nikolic was simply not a prospect and did *Page 1371 
not contact him further. Nikolic, however, testified that he only talked with Silverman once or twice and within a couple of days after his rejection of Mellos' counter-offer. Nikolic stated that he told Silverman he was no longer interested in the property and had made plans for a trip to Europe.
On March 1, 1977, the listing agreement with Associates expired, and Mellos listed the Embers with the Jim Broxton Agency. Nikolic and Mellos talked to each other again on March 22. At that time Nikolic's wife offered $275,000 for the Embers with $50,000 down and the balance over a 15-year term at 7 1/2%. The offer was accepted. Mellos testified that he accepted less money than that originally offered by Nikolic because he was ill and tired and needed to immediately sell the property for health and financial reasons. Nikolic testified that Mellos called him explaining that he needed to sell the property and Nikolic's wife then got on the phone and offered $275,000 stating that he (Mellos) would never get $300,000.
Mellos called Jim Broxton advising him of the sale and inquiring whether he owed him any commission. Broxton replied that he did not. No commission was paid to either Silverman or Associates.
Silverman and Associates filed suit against appellants and Nikolic for the commission provided in the listing agreement and for punitive damages for fraud. The trial court, hearing the evidence ore tenus, granted a directed verdict in Nikolic's favor at the close of plaintiff's evidence and ruled that Silverman and Associates were entitled to the commission by virtue of the extension clause. The court further found that appellants were not guilty of any fraud.
Under an exclusive right to sell agreement, the parties contract that the broker is entitled to a commission if within the time specified in the agreement he produces a person ready, willing, and able to purchase the property on terms authorized or agreeable to the owner. Extension clauses provide that the broker is entitled to a commission notwithstanding the expiration of the term of the listing agreement if the property is sold to one with whom the broker, prior to such expiration, negotiated or had some other form of dealing described in the agreement. Shorten v. Mueller, 206 Okla. 62, 241 P.2d 187
(1952). The purpose of such a clause is to protect the broker by preventing the owner from postponing acceptance until the listing agreement has expired and thereby circumvent the broker's right to compensation for locating a purchaser. Harkev. Gahagan, 338 So.2d 133 (La.App. 1976). The validity and enforceability of extension clauses have been universally upheld. See, e.g., Beck v. Neal, 228 Ark. 186, 306 S.W.2d 875
(1957); Whiting v. Johnson, 64 Wn.2d 135, 390 P.2d 985
(1964).
The owner and broker are free to frame their agreement as they see fit and may make the broker's commission dependent upon whatever conditions they agree upon so long as such conditions are not unlawful or contrary to public policy.Fischer v. Patterson, 97 N.H. 318, 86 A.2d 851 (1952). Under the language typically employed in extension clauses, it is not necessary that the actions of the broker be the "procuring" cause[1] of the sale although the broker must show some minimal causal connection between his efforts and the eventual sale.See, e.g., E.A. Strout Co. v. Hubbard, 104 Me. 366, 71 A. 1020
(1908); Kaye v. Coughlin, 443 S.W.2d 612 (Tex.Civ.App. 1969);Lloyd Hammerstad, Inc. v. Saunders, 6 Wn. App. 633,495 P.2d 349 (Wash.App. 1972). The courts have not formulated any precise rule or standard by which to determine the sufficiency of the broker's efforts. This result is largely attributable to the wide range of terms and expressions used in extension clauses to describe the obligation of the broker. Therefore, the nature and extent of the broker's *Page 1372 
efforts contemplated by the agreement must be determined in each case by a construction of the particular language involved. Englemann v. Auderer, 10 La.App. 136, 121 So. 194
(1929).
The expression used most frequently in extension clauses is that the broker must have "negotiated" with the buyer which has been construed as requiring that the broker interest the prospect to the extent that he becomes a likely purchaser, or, coming to terms or arranging the terms and conditions of a sale. See Clarke v. Blackfoot Water Works, 39 Idaho 304,228 P. 326 (1942). Other expressions include to "offer," or "quote," or "submit" the property to the purchaser. These expressions have been construed to require less activity by the broker than the term "negotiate." Bullis Thomas v. Calvert, 162 La. 378,110 So. 621 (1926). Compare Werner v. Hendricks, 121 Pa. Super. 46,182 A. 748 (1936) with Coppage v. Woodward, 105 So.2d 306
(La.App. 1958) and Whiting v. Johnson, 64 Wn.2d 135,390 P.2d 985 (1964).
In the instant case, the extension clause provided for a sale consummated with a prospect "introduced or interested" in said property. This expression seems to require even less effort still by the broker. See Wachtel v. Harkless, 112 Ind. App. 279,44 N.E.2d 510 (1942). In Wachtel, the court construed "introduced" as equivalent to "found" or "procured" and stated that the sale must be traced to the introduction of the purchaser to the owner. A face to face introduction is not contemplated, rather it is sufficient if the parties are brought into communication with each other. In that case, the broker's agent took the two prospective purchasers to the property, a tavern, and introduced them to the bartender. The owner was not present. They stated to the agent that they were interested in a place like this. Subsequently, without any further communication with the broker or the agent, they purchased the property. The court held the broker's efforts were sufficient to entitle him to the commission for there was no evidence that the prospect would have become a purchaser without the information from the broker.
The court in Carter v. Hayes, 337 So.2d 295 (La.App. 1976), upheld the trial court's award of a commission to a broker under an extension clause requiring the broker to "interest" the ultimate purchaser in the property. At a gathering of farmers, the eventual purchaser inquired of the broker if he had any farms for sale. The broker replied that he did, but did not specify any particular farm. The purchaser unsuccessfully attempted to contact the broker during the next few days, but finally arranged a meeting after the listing had expired where he discussed in detail two farms, one of which he subsequently purchased. The broker contacted the owner to inform him that he had a purchaser, and since the listing had expired, to determine if the owner still wanted to sell the land. The owner replied that he did. Subsequently, the broker called the owner and sent the purchaser to see him. The parties then concluded a sale in the absence of the broker. The owner refused to pay the commission so the broker filed suit. The trial court held the broker was not entitled to a commission since, although the purchaser knew the broker had some property for sale, the purchaser did not know the owner, price, or location of the property prior to expiration of the listing agreement.
On appeal, the trial court's ruling was reversed. The court stated the contract only required the purchaser to be interested in the property during the term of the agency. The court noted that the purchaser would not have learned of the property but for the activities of the broker, the owner would not have known of the purchaser had the broker not called, and the sale was effected within a period of one month during which time there were no other prospective purchasers. The court concluded from these facts that the purchaser became interested in the property as a result of the efforts or advertising of the broker during the active term of the listing.
In the instant case, the activities of Silverman have gone beyond merely "introducing or interesting" the prospect in the *Page 1373 
property. Although Nikolic and Mellos were acquainted, Nikolic testified that he first learned the Embers was for sale from Silverman. Silverman met with Nikolic and discussed the value of the property, equipment, and going business and, in addition, prepared a written offer for Nikolic. Silverman also presented the offer to Mellos, and after the rejection of the counteroffer, attempted to get the parties back together although the extent of his efforts is disputed.
To constitute performance the broker's activities must be at least minimally connected with the sale. Here there was such a connection since Silverman sparked Nikolic's original interest in the property which, though temporarily dormant, was revived at the prospect of a more favorable price.
Appellants contend that a broker must uninterruptedly continue to make efforts to bring about the sale in order to earn a commission under an extension clause. The cases relied on by appellant, however, are not persuasive. In Dancy v.Baker, 206 Ala. 236, 89 So. 590 (1921), the broker was to receive a commission if he found a purchaser ready, willing, and able to buy the property for $150,000. Negotiations between the parties terminated unsuccessfully. Four months later, the owner negotiated with the purchaser himself and sold the property on different terms. Unbeknown to the owner, the broker had continued his efforts to effect a sale. The opinion does not disclose if the agreement was an exclusive listing or the time of duration of the agreement. The court denied the broker his commission noting that since the broker had not fulfilled his obligation of procuring a purchaser ready, willing, and able to buy for $150,000, the owner was free to negotiate with the purchaser himself. The court reasoned to allow the broker a commission upon a sale on different terms than those authorized, in the absence of notice to the owner of the broker's renewed activities, would not alert the owner as to the broker's expectation of a commission and would prejudice the owner in negotiating with the purchaser. Therefore, the only significance of a subsequent sale upon different terms was the notice it afforded the owner respecting his right to conduct independent negotiations without incurring the responsibility for a commission.
In the instant case, appellees had the exclusive right to negotiate the sale. If the property was sold during the listing period, Associates would be entitled to the commission regardless of who effected the sale whether it be another agent or Mellos himself. Furthermore, the agreement did not limit the commission to the sale of the property at one definite price as in Dancy, but provided for a commission if the property was sold on any terms agreeable to Mellos. The court in Dancy
expressly recognized these distinct situations and the requirement of notice of the broker's activities in respect thereto:
 We do not overlook the rule recognized in Handley v. Shaffer, [177 Ala. 636, 59 So. 286] supra, that where a broker is employed merely to find a purchaser, with whom his principal is to negotiate a sale upon whatever, terms may be agreed upon as satisfactory, the broker's right to a commission does not depend upon his principal's knowledge of the fact that a purchaser to whom he has thus sold was sent to him by the broker. That rule of liability seems to be well settled. But where the broker is authorized to find and produce a purchaser only at a specified price and on specified terms, his commission being expressly made dependent upon a sale at that price (as is here the case), that rule of liability cannot be justly applied, unless the purchaser who presents himself to the principal is able and ready and offers to buy at the price and on the terms specified. Such an offer would be sufficient notice of the source of the purchaser, if notice were required; and, in any event, the absence *Page 1374 
of notice or knowledge could not prejudice the principal.
Id. at 239, 89 So. at 593.
Appellants also rely upon First National Bank of Birminghamv. Chichester, 352 So.2d 1371 (Ala.Civ.App. 1977), where the broker attempted to recover a commission for the leasing of the property by the owner after he revoked the broker's authority to sell. The court, citing Dancy, noted that whether revocation ended the obligation of the owner depended upon the owner's good faith and whether the broker's efforts were the procuring cause of the sale. Thus, since an entirely different contract was eventually executed by the owners, to constitute the procuring cause, the broker had to show that the owner continued uninterruptedly the negotiations initiated by the broker. Such a showing was not made and the broker was denied his commission. The instant case differs in that by virtue of the extension clause Silverman's efforts were not required to be the procuring cause of the sale.
Nikolic was "introduced or interested" in the property and that was all that was required to be done by the listing agreement to recover a commission. The parties are free to enter into whatever agreement they wish, and appellants cannot defeat the broker's recovery by attempting to impose a duty more stringent than that provided for in the agreement.
Appellants further contend that Associates did not introduce or interest Nikolic in the property since Silverman is not connected with or employed by Associates. However, Silverman obtained Associates' permission to present the offer and was acting on its behalf. A broker may employ a subagent to aid him in procuring a purchaser for property listed with him. Rawls v.Carlisle Baston, 18 Ala. App. 644, 93 So. 818 (1921); Alford v.Creagh, 7 Ala. App. 358, 62 So. 254 (1913). Therefore, introduction by Silverman was equivalent to introduction by Associates.
The extension clause in the instant case did not specify a time period in which it was to operate. In such a case, a reasonable time is presumed. Moore v. Holman Real Estate Co.,129 Ark. 465, 196 S.W. 479 (1917); Messick v. Powell, 314 Ky. 805, 236 S.W.2d 897 (1951). The trial court found the sale was consummated within a reasonable time, and we agree. Therefore, since the extension clause was valid and appellees fulfilled their obligation pursuant to the listing agreement, they are entitled to the commission.
AFFIRMED.
MADDOX, JONES, SHORES and BEATTY, JJ., concur.
[1] Procuring cause refers to a cause originating with a series of events which without break in their continuity result in procuring a purchaser ready, willing and able to buy on the owner's terms. Absent contractual provisions otherwise, the broker's activities must be the procuring cause of the sale. 12 Am.Jur.2d Brokers §§ 189, 190.