## E. A. STROUT COMPANY *vs*. LESLIE HUBBARD.

Kennebec.     Opinion September 12, 1908.

*Real Estate Brokers.   Contracts.   Customers.   Sale by Owner of Land.   Liability*
*for Commissions.   Evidence.   Instructions.*

The defendant placed his farm in the plaintiff's agency, for sale, and agreed that if it was sold to any party through the plaintiff's influence, by an advertisement or otherwise, he would pay a commission of all that was obtained in excess of eighteen hundred dollars.   He further agreed that in case he should sell the property to the plaintiff's customer for less than two thousand dollars, he would pay a commission of two hundred dollars. In case the defendant withdrew the farm from plaintiff's agency before sale, the defendant agreed to pay twenty dollars, and if the farm should be sold, either before or after withdrawal, to a customer to whom the plaintiff recommended it, or who had learned that it was for sale, directly or indirectly, through the plaintiff, he would pay a commission of two hundred dollars.   The defendant withdrew his farm from the plaintiff's agency, and afterwards sold it.

*Held:*   (1) That it would have been competent for the jury to find from the evidence that the purchaser was the plaintiff's customer, and that the farm was sold to a customer to whom the plaintiff or its agents had recommended it, or who had learned that it was for sale, indirectly at least, through the plaintiff's advertisements.

(2) That a requested instruction to the effect that "if the listed place was sold, either before or after withdrawal, to a customer to whom the plaintiff or its agents in good faith recommended it, then the defendant is liable for a commission of two hundred dollars, whether such sale was effected in whole or in part by reason of such recommendation or not" was correct and should have been given.

(3) That an instruction to the jury to the effect that it was for the plaintiff to satisfy them that the same was by reason of the plaintiff's influence in some way and in some degree, and without which it would not have been sold to the purchaser, injected into the contract an element which the parties did not put into it.   It was not necessary for the plaintiff to show that the purchaser was influenced by the plaintiff or its agents in making the purchase, if in fact he was the plaintiff's customer.

On motion and exceptions by plaintiff.     Exceptions sustained. Motion not considered.

Action of assumpsit brought by the plaintiff in the Superior Court, Kennebec County, to recover the sum of $200 as commission on the sale of a farm under a written contract between the plaintiff and the defendant. Plea, the general issue. Verdict for plaintiff for $36.00. The plaintiff excepted to certain rulings made by the presiding Justice during the trial, and after verdict filed a general motion for a new trial.

The case appears in the opinion.

*Williamson & Burleigh,* for plaintiff.

*H. H. Patten,* for defendant.

SITTING: EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, BIRD, JJ.

SAVAGE, J.    Action to recover commissions on the sale of a farm. The plaintiff claimed two hundred dollars. The verdict was for the plaintiff for thirty-six dollars. The case comes up on the plaintiff's exceptions and a motion for a new trial. The evidence is made a part of the bill of exceptions, and in order properly to inquire into the merits of the exceptions it is necessary to ascertain the facts to which they relate, or rather such facts, favorable to the plaintiff, as the jury would have been warranted in finding from the evidence.

It is admitted that on November 30, 1906, the defendant made and signed a written contract with the plaintiff of the following tenor, so far as material to this case :

"THE E. A. STROUT FARM AGENCY.    BOSTON-NEW YORK.

I hereby place the property, real and personal, of which a description has been given, in your hands for sale. If the same is sold to any party through your influence by advertisement or otherwise, I will pay to you or your order a commission of all you get in excess of $1800, clear to me. In case I should sell the property to your customer for less than $2,000, I will pay to you or your order a commission of two hundred dollars ; or if the sale exceeds $2000, ten per cent on the full amount of the sale. The commission to be due and payable the day the sale is effected.

Should I withdraw the said estate from your hands before you

have effected a sale, I will, in consideration of your having listed the property, pay you forthwith $20.00, or two per cent of the asking price, if above $1000.

Should the estate be sold either before or after withdrawal to a customer to whom you or your agents have recommended it, or who has learned that it was for sale, directly or indirectly, through you, your agents or your advertisements, I will pay your commission as agreed."

The plaintiff in two counts has declared on the clauses in the contract whereby the defendant agreed to pay a commission, in case he sold a farm to a customer of the plaintiff, or in case he should sell the farm before or after withdrawal to a customer to whom the plaintiff or its agents had recommended it, or who had learned that it was for sale, directly or indirectly, through the plaintiff or its agents or advertisements. The plaintiff did not sue for the $36 for which the verdict was returned.

At the same time the defendant signed and delivered to the plaintiff's agent a written description of the estate. Thereupon, the plaintiff "listed" the defendant's farm. That is to say, it included a condensed description of the farm in a list or catalogue of estates which it had for sale, which it published and sent to its agents in Bangor and Newport in the early part of 1907. It also sent pictures of the buildings, from a photograph furnished by the defendant. Afterwards, by a letter dated April 8, 1907, the defendant withdrew his farm from the plaintiff's hands, and, a week later, sold and conveyed it to one Blanchard for $1820.

It was admitted that the plaintiff recommended the farm to Blanchard, obtained an offer of $1700 from Blanchard and brought him to the defendant's house on April 3, 1907. There was testimony that the plaintiff's agent then communicated Blanchard's offer to the defendant, who declined to accept it.

It was also admitted that Blanchard knew that the farm was for sale previous to its being recommended by the plaintiff. The defendant testified that Blanchard asked him in February, 1907, what he would take for the farm, if he would take $1500, and that he declined to sell for that price. Blanchard testified that

previous to this conversation he knew the farm was "listed," that is, in the plaintiff's agency, as we interpret the testimony. It also appears that Blanchard had lived only a mile or two away, and knew the farm well.

Further than this, the jury would have been warranted by the evidence in finding that about April 1, 1907, Blanchard called on the plaintiff's agent in Bangor with a view to the purchase of a farm somewhere; that the agent showed him among others the description and picture of the defendant's place; that this agent recommended it and advised him to see the plaintiff's agent in Newport, who would show him the defendant's farm and another one of which he had heard, and to which he was inclined; that he went to Newport and saw the agent there; that that agent showed him the description of the Hubbard farm, and recommended it; that he then offered $1700 for it; that the agent took him to the defendant's house to see if a trade could be made; that while there he and the defendant tried to negotiate a trade, but disagreed upon the price, and that the defendant, five days afterwards, disregarding the plaintiff's agents in Bangor and Newport, whom he knew, and with whom thus far he, had been in communication, sent his letter of withdrawal direct to the plaintiff's New York office.

From these facts, we think it would have been competent for the jury under proper instructions to find that Blanchard was the plaintiff's "customer," and that the farm was sold to a customer to whom the plaintiff or its agents had recommended it, or who had learned that it was for sale, indirectly, at least, through the plaintiff's advertisements. In either case, we are left to inquire whether any right to commissions accrued to the plaintiff by reason of the sale by defendant to Blanchard after the letter of withdrawal. And the answer will depend upon a construction of the contract which the defendant made, and not upon the rights which arise by implication when one leaves his property in the hands of a broker for sale, without mention of specific conditions, as between owner and broker.

The contract was a comprehensive one. It fully protected the rights of the plaintiff in every contingency. It may seem a hard

and  uneven  contract,  but  it  was  one  which  the  parties  had  a  right
to  make,  and  it  must  be  enforced  according  to  its  terms.    The  first
clause  in  the  contract  relating  to  commissions  seems  to  contemplate
a  sale  directly  through  the  plaintiff,  by  its  bringing  a  customer
ready  and  willing  to  pay  a  price  of  $1800  or  more,  in  which  case
the  plaintiff  was  to  have  all  in  excess  of  $1800.    The  next  clause
contemplates  that  the  defendant  might  himself  sell  the  farm  for  any
price  he  pleased  to  a  customer  of  the  plaintiff,  that  is,  one  whom
the  plaintiff  had  interested  in  the  farm,  to  whom  it  had  recommended
it,  and  whom  it  had  produced  to  the  defendant  as  a  purchaser
at  some  price.    Such  a  person  would  fairly  be  the  plaintiff's
"customer."    In  that  case,  the  plaintiff  was  to  be  entitled  to  a  com-
mission  of  $200,  whatever  the  selling  price  might  be.

There  was  another  contingency,  and  one  which  may  have
happened  in  this  case.    After  the  plaintiff  had  thus  produced  a
customer,  after  it  had  directed  his  attention  to  this  farm,  and  per-
haps  specifically  away  from  others,  after  it  recommended  the  farm  and
advised  its  purchase,  after  the  customer  had  begun  to  nibble  at  the
hook,  the  defendant  might  withdraw  the  farm  from  the  plaintiff's
agency,  as  provided  in  another  clause  in  the  contract,  and  thus
deprive  the  plaintiff  of  the  $200  commissions.

This  contingency  was  provided  for  in  the  other  clause  which  we
have  referred  to,  which  was  to  the  effect  that  if  the  farm  should  be
sold  by  the  defendant  after  withdrawal  to  a  customer  to  whom  the
plaintiff  had  recommended  it,  or  who  had  learned  that  it  was  for
sale,  directly  or  indirectly  through  the  plaintiff,  the  defendant
should  pay  a  commission  of  $200.    And  under  this  clause  the  plain-
tiff  now  bases  its  right  to  recover.

We  have  already  defined  what  is  meant  by  "customer"  of  the
plaintiff,  as  applied  to  this  case.    It  will  be  noticed  that  the  defend-
ant  agreed  in  the  last  named  contingency  to  pay  a  commission  in
case  of  sale  to  a  customer  to  whom  it  had  recommended  the  farm,
or  who  had  learned  that  it  was  for  sale  through  the  plaintiff.    The
agreement  was  not  limited  to  a  sale  to  a  customer  whom  the  plain-
tiff  had  influenced  to  purchase.    These  are  distinct  propositions :

Now with the case in this situation, and under this contract, which we have construed, the plaintiff asked the court to give the following instruction to the jury :—"If the listed place was sold either before or after withdrawal to a customer to whom the plaintiff or its agents in good faith recommended it, then the defendant is liable for a commission of $200, whether such sale was effected in whole or in part by reason of such recommendation or not." The Judge declined to give this instruction, but instead instructed the jury as follows: "Was Mr. Blanchard influenced in any way, by any act, conversation, without which he would not have purchased that place, to purchase it of Mr. Hubbard? He may have looked at the place before, but had he without the influence of the Strout Company or its agents made up his mind to purchase it, or did he without their influence, and without what was said by them finally purchase this place? And that is the nub of this case, in my opinion for your determination. . . . . It is for the plaintiffs to satisfy you that it was by reason of their influence, in some way and in some degree, and without which it would not have been sold to Mr. Blanchard, before they are entitled to a verdict for more than the $36 which I have already alluded to." The instruction given injected into the contract an element, which as we have seen, the parties did not put into it, and an element onerous and prejudicial to the contract rights of the plaintiff. By the contract it was sufficient to show that the plaintiff sowed seed, and the defendant reaped his harvest, where the seed had been sown. It was not incumbent on the plaintiff to trace the development of the seed and the growth of the plant. It was not necessary to show even that the harvest came from the plaintiff's seed. For such was not the contract.

The requested instruction, we think, correctly stated the proper rule under this contract, and it should have been given. As the plaintiff's exception to the instructions given and to the refusal to instruct as requested must be sustained, it is unnecessary to consider the motion for a new trial.

*Exceptions sustained.*