In re EASTERN INNS OF NEW HAMPSHIRE, INC., Stagecoach Inn, Inc., Debtors.

EASTERN INNS OF NEW HAMPSHIRE, INC., Stagecoach Inn, Inc., Plaintiffs,

v.

INDIAN HEAD BANK AND TRUST COMPANY, et al., Defendants.

Bankruptcy Nos. 285–00005, 285–00075. Adv. No. 285–0031.

United States Bankruptcy Court, D. Maine.

April 14, 1987.

Richard E. Poulos, Portland, Me., for plaintiffs.

Mark E. Beliveau, Sanders and McDermott, Hampton, N.H., for New England Hotel Realty.

Benny's Real Estate, pro se.

## MEMORANDUM OF DECISION

FREDERICK A. JOHNSON, Chief Judge.

In this proceeding two real estate firms seek a commission from the proceeds of the sale of the Debtors' motel complex. The employment of one firm, Benjamin Dagostino, Jr., d/b/a Benny's Real Estate, of Exeter, New Hampshire, (Benny's), was approved by the Court on an *ex parte* motion of the Debtors. Employment of the other firm, New England Hotel Realty (NEHR), of Portsmouth, New Hampshire, was never approved. NEHR seeks a *nunc pro tunc* order approving its employment and for a commission of 5½ percent of the sale price.

The Court concludes that application of appropriate sections of the Bankruptcy Code do not permit allowance of a commission to either broker.

The pertinent facts are based upon two days of testimony and numerous exhibits.

Commencing in 1979, Eastern Inns of New Hampshire (Eastern) undertook construction of a motel and office building in Kittery, Maine. After completion, Eastern engaged several real estate brokers to sell the premises. NEHR and Benny's were two such brokers. Over the course of years Eastern had executed a total of six different listing agreements with NEHR. The last such agreement, which was a six months open listing, was executed on June 6, 1985. The agreement provided:

> If during this listing period this property is sold or traded by you or if you produce a purchaser ready, willing and able to purchase the property, OR IF WITHIN 180 days after the expiration of this listing period a sale is made to any person to whom the property has been shown or offered by you during the original listing period, I agree to pay a commission in cash at closing of 5½% of the sale price. This contract will terminate after the expiration of said 180 days on June 14, 1986.

Over the years NEHR expended considerable time and effort in marketing the Eastern property. NEHR had shown the property to several prospective purchasers. One such prospective purchaser, first shown the property by NEHR, was Della Pasqua, the ultimate purchaser. NEHR presented at least three offers on Della Pasqua's behalf to Eastern for the property. The rejected offers ranged from a low of $900,000 in 1983 to a high of $1,300,000 in 1985. The final offer was submitted in the early fall of 1985. NEHR had no further contact with Della Pasqua after that.

In the Fall of 1985 Della Pasqua, for reasons unclear to this court, began to work with Benny's. At about the same time NEHR, through Steve Farrar, began working with Harper Sibley, President and sole owner of Sibley Management, Inc.. Sibley had looked at the property in late 1984 and contacted Farrar in late 1985 or early 1986 expressing his continued interest.

On February 28, 1986, upon *ex parte* application by Debtors' attorney, the Court authorized the Debtors to retain Benny's to market the Kittery property. The order provided that the real estate commission payable to Benny's not exceed $50,000.00.

Shortly thereafter a flurry of activity commenced:

Early in March Della Pasqua, through Benny's, submitted an offer of $1,550,000 for the property.

On March 12, 1986, Sibley, through NEHR, submitted an offer of $1,565,000 for the property.

On April 3, 1986, NEHR, through its attorney, wrote to Debtors' attorney claiming NEHR's right to a commission in the event of a sale to Della Pasqua.

On May 20, 1986, after further negotiations, the Debtors signed a contract with Della Pasqua, with a sale price of $1,585,000, with a $30,000 commission payable to Benny's.

On May 28, 1986, the Debtor filed a "Notice of Intent to Sell Real Property Free and Clear of Liens" to Della Pasqua. The notice provided for a purchase price of $1,585,000 with a broker's commission of $30,000 payable to Benny's.

On June 2, 1986, NEHR objected to the sale on the ground that NEHR had introduced Della Pasqua to the property and had worked with him over several years; that Debtors' attorney had dealt unfairly with NEHR; and that the Debtors sought to deny NEHR its commission which it had earned. NEHR's objection was scheduled for hearing on June 12, 1986. On that date the Court entered an order authorizing the sale to Della Pasqua and providing that Debtor's attorney place $87,175 in escrow, in an interest bearing account, pending a final order of this Court as to which broker, if any, is entitled to a commission from the Debtor as a result of the sale.

## NEW ENGLAND HOTEL REALTY'S CLAIM

■ NEHR basis its claim to a commission on the so-called "extension clause" of its listing agreement and that Della Pasqua is a "person to whom the property has been shown or offered by you [NEHR] during the original listing period." Such clauses have been recognized and upheld in Maine. *Strout Company v. Hubbard*, 104 Me. 366,

71 A. 1020 (1908). In a bankruptcy case, however, the employment of professionals and their compensation is governed by the Bankruptcy Code.

Section 327 of the Code provides:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

■ Real estate brokers are "professional persons" under Section 327. *In re Roberts*, 58 B.R. 65 (Bankr.N.J.1986). Section 327, by virtue of Section 1107, applies to debtors in possession. *In re Martin*, 59 B.R. 140 (Bankr.Me.1986).

■ Courts have taken a strong stand against paying compensation to professionals whose employment was not properly authorized. *In re Certain Special Counsel to Boston & Me. Corp.*, 737 F.2d 115 (1st Cir.1984). In this District a bankruptcy court may, in the exercise of its sound discretion, upon a proper showing, grant compensation to professionals who have performed services for the estate without prior court approval. *In re Cormier*, 35 B.R. 424 (D.Me.1983). As a minimum, there must be a showing that the estate has benefited from the professional's services. *In re Wallingford Fruit*, 35 B.R. 426 (D.Me.1983).

■ Here, it is clear that the debtors' estate did not benefit from the efforts of NEHR. NEHR was not the effective and producing cause of the sale of the debtor's property. It does not claim to be. It relies completely upon the extension clause of its listing agreement.

NEHR alleges that Debtors' counsel, Richard E. Poulos, failed, refused, or neglected to apply for approval of NEHR as a broker and that Mr. Poulos has not dealt fairly with NEHR.[1] These allegations, if

---

**1.** Poulos, in turn, accuses NEHR of bad faith and NEHR accuses Mr. Dagostino, Sr. of unethi-

proven, would not help NEHR here. Even if Mr. Poulos had obtained approval of NEHR as a broker, this would not entitle NEHR to a commission under the facts of this case. Section 330 of the Code provides for reasonable compensation "based on the nature, the extent and the value of such services...." NEHR's services, unfortunately, had no value to the debtors' estate. The Court, therefore, is not authorized to approve employment of NEHR *nunc pro tunc*, or allow compensation to NEHR.

### BENNY'S REAL ESTATE CLAIM

 As previously noted, Sections 327 and 1107 of the Code provide that a debtor in possession, with the Court's approval, may employ professional persons, who, among other things, are "disinterested persons."

Section 101(13)(A) defines a "disinterested person" as one that "is not a creditor, an equity security holder, or an insider."

At the hearing it was developed that Benjamin Dagostino, Sr. was a partner in Benny's Real Estate with his son and that he was the founder of the business. It also was established that it was Benjamin, Sr. who worked with Della Pasqua on the sale of the motel. Benjamin, Jr. met Della Pasqua for the first time at the courthouse on the first day of the hearing. More importantly, it was established that Benjamin, Sr. was a creditor of the debtors at the time of the Court's approval of the employment of Benny's Real Estate by the Debtor. This fact was not revealed to the Court in the Debtors' application for authority to employ Benny's. If these facts had been revealed to the Court, the Court would not have approved the employment of Benjamin Dagostino, Jr., d/b/a Benny's Real Estate, because Benjamin Dagostino, Sr., a partner in the firm, was not a disinterested person.

It was also revealed at the hearing that two other brokers, Beacon Ventures, of Boston, and Omni Group, of New Hampshire, each expect one-third of any commission received by Benny's. This arrangement was not revealed to the Court at any time prior to the hearing.

Because Benjamin Dagostino, Jr., d/b/a Benny's Real Estate, was not a "disinterested person" within the meaning and intent of Section 327, this Court's order of February 28, 1986 authorizing Benny's employment will be vacated and Benny's application for compensation will be denied.

An appropriate order will be entered.

cal conduct. The Court makes no findings on these allegations.