SHORES, Justice.
The question presented is whether the trial court erred in holding that the seller of real property was required to pay a commission to a real estate broker. We affirm.
In June 1979, Sam Kaufman II entered into a lease of real property with the Montgomery Area Mental Health Authority (“MMHA”); the property is located at 101 Coliseum Boulevard, Montgomery, Alabama. The lease provided benefits to the Irving Winter Company (“Winter Company”) as the real estate broker. Article 24 of that lease provided:
“Lessor does hereby authorize Winter company, its successors or assigns, as Agent, to collect and receipt for the rents payable hereunder during the entire term or any extensions hereof. Lessor also agrees that Agent through whom property is rented to lessee shall be paid a professional fee of seven (7%) percent of the sales price by Lessor in the event the property is sold to lessee occupying the same during the term of the Lease, or any extensions thereof, or within a period of thirty days after the termination of same.
“By accepting the benefits of this lease, the Lessor binds itself to pay said Winter Company, as Agent, a professional lease fee of five (5%) percent of the rental amount received and a management fee of one (1%) percent of such rental amount whether collected or not, so long as either tenant or assignee continues to occupy said premises or rent is collected from said tenant or assignee. Said professional fee shall be deducted monthly from rent received and the balance remitted to Samuel Kaufman II, as Trustee in Bankruptcy, or Lessor’s successors and assigns, along with a statement of account for that month.”
The 1979 lease expired in 1987. On August 10, 1987, Glover entered into a lease agreement with MMHA, pursuant to which MMHA was to lease the property for two years from Glover. The provisions of Article 24 were omitted in the 1987 lease, and litigation pursued to determine Glover’s obligations under that lease.
Prior to the present case, Glover and the Winter Company were involved in a lawsuit over whether the Winter Company would receive “professional fees,” the provision for which had been omitted from the 1987 lease. The trial court in that case ruled *883 that the 1987 lease was an extension of the 1979 lease and that the 1987 lease was governed by the terms of the 1979 lease; that Glover was required to pay the Winter Company professional fees under the 1987 extension; and that Glover would be required to pay a sales commission equal to 7% of the sales price “upon the sale of 101 Coliseum Blvd. to Montgomery Mental Health Association.”
On August 31, 1989, Glover and MMHA entered into a second extension of the lease agreement; as extended, the lease was to expire on April 30,1992. On September 25, 1991, the Alabama Mental Health Finance Authority (“AMHFA”) purchased the property at 101 Coliseum Boulevard from Glover for $765,000. On September 26, 1991, MMHA entered into a lease agreement with AMHFA for 20 years with rent of $1.00 per year; pursuant to that lease agreement, the property is to be used exclusively for mental health services. If the lease is not terminated before the 20-year term, and if the law allows, AMHFA is required to transfer title to MMHA. The lease also provides that if it is not possible to transfer title to MMHA at the end of the term, title will be transferred to the Alabama Department of Mental Health and Mental Retardation, which must renew the lease on the same terms and must “work in good faith to convey title” to MMHA.
The Winter Company filed the present action, alleging that it was entitled to a 7% sales commission. The trial court entered the following order, which we now affirm.
“THIS MATTER is presented to the Court upon the Complaint of Plaintiff Irving Winter Company, Inc. (hereinafter ‘Winter Company’), the answer of Defendant William M. Glover (hereinafter ‘Glover’), the depositions of Henry Stough, Glover, George Carlton, briefs of the parties, and oral argument of counsel. The present litigation arises out of the sale of real property located at 101 Coliseum Boulevard by Glover to the Alabama Mental Health Finance Authority and a controversy over prior professional lease fee payments claimed to be due. Winter Company is the real estate agent that negotiated the original lease agreement involving the Montgomery Mental Health Authority and the property located at 101 Coliseum Boulevard.
“THE COURT has previously been confronted with a dispute between Winter Company and Glover regarding the payment of certain professional fees pursuant to the Montgomery Mental Health Authority lease. Certain facts of the prior litigation, Irving Winter Company v. William Glover, CV-87-1875-PH, are pertinent to the present case. Those facts are as follows:
“ ‘At issue is whether the Plaintiff Winter is entitled to certain professional fees as real estate agent pursuant to the original 1979 lease with Sam Kaufman, trustee in bankruptcy.
“ ‘The Defendant Glover purchased the 101 Coliseum Boulevard property in 1980. Glover’s sales contract expressly made his purchase subject to the MMHA (Montgomery Mental Health Authority) lease and the deed was made subject to all restrictions of record. There is no dispute but that Glover considered the lease to be a valuable part of the purchase. The 1979 lease provided for certain fees to be paid Winter in Article 24 of the lease and this provision is set out below.
“ ‘ “Lessor does hereby authorize Winter Company, its successors or assigns, as agent, to collect [and] receipt for the rents payable hereunder during the entire term or any extensions hereof. Lessor also agrees that agent through whom property is rented to Lessee shall be paid a professional fee of seven percent (7%) of the sales price by Lessor in the event the property is sold to Lessee occupying the same during the term of the lease or any extensions thereof, or within a period of thirty (30) days after [the termination] of same.
“ ‘ “By accepting the benefits of this lease, the Lessor binds itself to pay said Winter Company, as agent, a professional lease fee of five percent (5%) of the rental amount received and a *884 management fee of one percent (1%) of such rental amount whether collected or not, so long as either tenant or assignee continues to occupy said premises or rent is collected from said tenant or assignee. Said professional fee shall be deducted monthly from rent received and the balance remitted to Samuel Kaufman, II, as trustee in bankruptcy, or Lessor’s successors and assigns along with a statement of account for that month.”
“ ‘On August 10, 1987, Glover entered into a new lease agreement with his lessee, MMHA (Montgomery Mental Health Authority). The 1987 lease, along with a [sic] several other changes, omitted the “professional fee” provision. Plaintiff Winter Company contends that notwithstanding the new lease, Glover as lessor remains bound to pay the five percent lease fee, the one percent management fee, and the seven percent sales commission due if MMHA (Montgomery Mental Health Authority) purchases the building during an “extension” of the 1979 lease.’
“Order of the Court at Page 2.
“In the previous litigation, viz., Case No. CV-87-1875-PH, the Court held that Glover had the duty to continue to pay a five percent professional lease fee as provided in the 1979 lease as a part of a continuing commission. Secondly, the Court ruled that Glover had no duty to pay the one percent management fee since Winter Company was no longer managing the property at the time of that litigation. Furthermore, the Court ruled that Winter Company would be entitled to a seven percent sales commission upon a subsequent sale of the 101 Coliseum Boulevard property to the Montgomery Mental Health Authority during the term of the current lease or within thirty days of its termination.
“On August 13, 1990, a contract of sale for the 101 Coliseum Boulevard property was executed between Glover and the Alabama Mental Health Finance Authority. This Finance Authority was created by the Alabama legislature to fulfill a legislative purpose in ‘providing for the acquisition, construction, improvement, and equipment of mental health facilities.’ Code of Alabama, § 41-10-359 (1975). On September 26, 1990, the property at 101 Coliseum Boulevard was leased by the Alabama Mental Health Finance Authority to the Montgomery Mental Health Authority, the same lessee under the extensions of the original lease, for a specific term. The Montgomery Mental Health Authority has been in continuous possession of the property at 101 Coliseum Boulevard since the execution of the original lease negotiated by Winter Company and remains in possession of the property at this time.
“The issue presented in this litigation is whether Glover is required to pay the seven percent sales commission set out in the original lease, even though the property was not sold directly to the lessee, the Montgomery Mental Health Authority. There is no dispute that the record title to the 101 Coliseum Boulevard property was actually placed in the name of the Alabama Mental Health Finance Authority and not in the name of the lessee, Montgomery Mental Health Authority.
“Winter Company contends that, even though the Montgomery Mental Health Authority was not the actual record purchaser of the subject property, Glover should be required to pay the sales commission because the Montgomery Mental Health Authority is the equitable owner of the 101 Coliseum Boulevard property and will ultimately become the record owner. Glover, on the other hand, contends that no sales commission is due, because the subject property was not actually sold to the Montgomery Mental Health Authority, as lessee, under the original lease. Glover’s contention is that the Alabama Mental Health Finance Authority is a separate corporate and legal entity from the Montgomery Mental Health Authority, and, therefore, that the provision of the original lease requiring payment of a sales commission to Winter Company upon sale of the subject *885 property to the lessee does not apply in this instance.
“Winter Company’s argument on this issue may be summarized to state that, while the Montgomery Mental Health Authority is not the record title holder of the premises, it is the equitable owner of that very property. Winter Company’s argument in its trial brief to this Court is as follows:
“ ‘First and foremost, Lessee is continuing in possession of the property under a lease from the Finance Authority. The monthly rental under that lease is the nominal sum of $1.00 per year for a term of twenty years. At the end of this twenty year term, the property will simply be deeded to Lessee without the requirement for the payment of any further consideration. If it should occur that the transfer to Lessee at the end of the term is contrary to law, the lease will be automatically renewed for another term without the payment of any further consideration by Lessee. Even if the transfer to Lessee would be contrary to law existing at the end of the lease term, the lease provides that Lessor (the Alabama Mental Health Finance Authority) must, in that case, convey the property to the “Alabama Department of Mental Health and Mental Retardation, or its successor, on the condition that this lease shall be automatically renewed by said Department, upon the same terms and conditions, for an additional twenty (20) year term on the condition that said Department shall work in good faith to convey title to the [Authority] as soon as such would be permitted under the Constitution and laws of the State of Alabama. Thus, for a consideration of only twenty dollars, the Lessee will eventually acquire record title to the property. It now has equitable title.
“ ‘Clearly, it is the contemplation of both Lessee and the Finance Authority that record title will eventually vest in Lessee.' ”
“Evidence before this Court indicates that all parties interested in the 101 Coliseum Boulevard property were aware of the Court’s prior ruling fixing the liability of Glover to pay a sales commission at the time the sales contract between Glover and the Alabama Mental Health Finance Authority was executed. Moreover, evidence indicates that Glover was interested in avoiding the payment of a sales commission to Winter Company.
“The Court also notes that the Alabama Mental Health Finance Authority is a public corporation created by a legislative act. See Code of Alabama, § 41-10-359 (1975). The Alabama Mental Health Finance Authority was created by the legislature to provide other parties with financing for properties that are to be used for the provision of the mental health services to citizens of the State. Furthermore, the Court notes that the lease agreement between the Alabama Mental Health Finance Authority and the Montgomery Mental Health Authority contemplates that record title to the 101 Coliseum Boulevard property will ultimately be transferred to the Montgomery Mental Health Authority. The present lessee will remain in possession of the leased premises and will have all of the benefits of ownership. Also, the Court is persuaded by the fact that the lease agreement between the Alabama Mental Health Finance Authority and the Montgomery Mental Health Authority calls for the Montgomery Mental Health Authority to pay only $1.00 per year to the Finance Authority for the use of the property.

“Ruling

“Based upon its review of the evidence presented to it, the Court finds that Winter Company is entitled to a payment of a seven percent sales commission from Glover on the full purchase price of the 101 Coliseum Boulevard property. The Court finds that there is evidence indicating that the transaction between the Montgomery Mental Health Authority and the Alabama Mental Health Finance Authority amounts to a sale of the property to the Montgomery Mental Health *886 Authority, the equitable title owner, and there is substantial evidence before the Court indicating that the Montgomery Mental Health Authority is in fact the equitable owner of the property at 101 Coliseum Boulevard.
“IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED by the Court as follows:
“1. Defendant William M. Glover shall pay to Plaintiff Irving Winter Company, Inc. the sum of $53,550.00 representing seven percent of the gross sales price of the property at 101 Coliseum Boulevard.
“2. Defendant William M. Glover shall pay all amounts due to Plaintiff Winter Company, Inc. within thirty (30) days of this Order.
“Costs of Court are taxed against Defendant William M. Glover, for which execution may issue.
“DONE this 20th day of September, 1991.
“/s/ JOSEPH D. PHELPS CIRCUIT JUDGE”
We are unpersuaded by Glover’s argument that Winter was not the primary cause of the sale of this property. This Court has previously stated:
“The owner and broker are free to frame their agreement as they see fit and may make the broker’s commission dependent upon whatever conditions they agree upon so long as such conditions are not unlawful or contrary to public policy. Fischer v. Patterson, 97 N.H. 318, 86 A.2d 851 (1952). Under the language typically employed in extension clauses, it is not necessary that the actions of the broker be the ‘procuring’ cause of the sale although the broker must show some minimal causal connection between his efforts and the eventual sale. See, e.g., E.A. Strout Co. v. Hubbard, 104 Me. 366, 71 A. 1020 (1908); Kaye v. Coughlin, 443 S.W.2d 612 (Tex. Civ.App.1969); Lloyd Hammerstad, Inc. v. Saunders, 6 Wash.App. 633, 495 P.2d 349 (1972). The courts have not formulated any precise rule or standard by which to determine the sufficiency of the broker’s efforts. This result is largely attributable to the wide range of terms and expressions used in extension clauses to describe the obligation of the broker.”
Mellos v. Silverman, 367 So.2d 1369, 1371 (Ala.1979). This Court further stated:
“To constitute performance the broker’s activities must be at least minimally connected with the sale. Here there was such a connection since Silverman sparked Nikolic’s original interest in the property which, though temporarily dormant, was revived at the prospect of a more favorable price.”
367 So.2d at 1373.
MMHA became interested in purchasing 101 Coliseum Boulevard and made inquiries into buying the property directly but found the price to be prohibitive. MMHA now owns the equitable title and will ultimately own the property outright. The Winter Company was the broker for the original lease and sparked MMHA’s “original interest” in the property; this is true even though that original interest may have been “dormant” temporarily.
For the foregoing reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON and KENNEDY, JJ„ concur.