**In re EL PASO REFINERY,
L.P., Debtor.**

**Bankruptcy No. 92–13446FM.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

. May 26, 1993.

Charles A. Beckham, Jr., Kemp, Smith, Duncan & Hammond, P.C., El Paso, TX, for debtor.

Adrian M. Overstreet, Overstreet, Winn & Edwards, P.C., Austin, TX, for examiner.

Don Williams, I.R.S., Austin, TX, for IRS.

*MEMORANDUM OPINION ON RESPONSE OF UNITED STATES OF AMERICA TO APPLICATION OF DEBTOR TO EMPLOY WRIGHT KILLEN & CO. AS TECHNICAL AND INDUSTRY CONSULTANTS, NUNC PRO TUNC*

FRANK R. MONROE, Bankruptcy Judge.

On April 15, 1993, the Court held a hearing on the Response of United States of

America ("Response") to Application of Debtor to Employ Wright Killen & Co. as Technical and Industry Consultants, Nunc Pro Tunc ("Nunc Pro Tunc Application"). This is a core matter under 28 U.S.C. § 157(b)(2)(A) as it deals with the administration of this estate. As such, it is a matter which arises under Title 11. Therefore, this Court has jurisdiction to enter a final order disposing of the merits of the matter pursuant to 28 U.S.C. § 1334(a) and (b), 28 U.S.C. § 151, 28 U.S.C. § 157(a) and (b)(1) and the standing Order of Reference existing in this District. Pursuant to Bankruptcy Rules 7052 and 9014, this Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law upon which the ruling of the Court is based.

### Findings of Fact

1. On October 23, 1992, the debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The debtor's business was the operation of a high conversion gasoline refinery located in El Paso, Texas.

2. Wright Killen & Company ("Wright Killen") is a process industry management and engineering consulting firm from Houston, Texas.

3. Prior to the bankruptcy filing, Wright Killen provided technical assistance and assisted in the valuation of the refinery. These services, which were unrelated to the filing, resulted in Wright Killen being paid $32,681.45 by the debtor on or about October 14, 1992.

4. The debtor also agreed with Wright Killen to employ it for work anticipated to be needed after the filing, including the rendering of technical assistance and advice regarding operating, shutting down, maintaining and budgeting for the refinery. In addition, Wright Killen was to provide assistance to the Debtor on asset valuation matters, restructuring of the debtor's assets and operations, and an analysis of pertinent industry issues. Wright Killen was given a retainer in the sum of fifty thousand dollars ($50,000.00) by the debtor on or about October 20, 1992, to secure this post-petition work.

5. Wright Killen provided copies of its employment contract to Andrews & Kurth, L.L.P. ("Andrews & Kurth") debtor's counsel, so that counsel could file an application seeking Court authorization to employ Wright Killen. However, Andrews & Kurth never filed the application.

6. In reliance on counsel's representations and assurances that they would take care of filing the application to employ, Wright Killen performed those services requested of it by the debtor from approximately October 14, 1992, through the first week of December 1992.

7. On or about November 2, 1992, shortly after the bankruptcy commenced, the Court conducted hearings and heard testimony regarding the operation of the refinery and the debtor-in-possession's request to use cash collateral. The Court denied the request and found that it was in the best interests of the creditors of this estate for refinery operations to be shut down by January 1993. That shut down subsequently occurred.

8. Wright Killen advised the debtor regarding the shut down process to employ and monitored the same to ensure that it was conducted safely and in a manner that preserved the value of the refinery equipment.

9. Wright Killen ceased providing services to the debtor as of the end of December 1992.

10. On January 20, 1993, the debtor-in-possession replaced Andrews & Kurth with its current counsel, Kemp, Smith, Duncan & Hammond, P.C. ("Kemp, Smith").

11. On February 2, 1993, the Examiner filed a Motion to Require Professionals to Seek and Obtain Authorization for Employment or Return Monies to the Debtor ("Motion"). An expedited hearing on the Motion was held on February 16, 1993. Pursuant to that hearing, an Order Granting the Motion with conditions ("Order") was entered in the case on February 26, 1993. The Order required Wright Killen to file an application to employ within twenty (20) days of the Order or return eighty-two

thousand six hundred and eighty-one dollars and forty-five cents ($82,681.45).

12. On March 8, 1993, the debtor-in-possession filed this Nunc Pro Tunc Application seeking authority to hire Wright Killen.

13. On March 16, 1993, the Internal Revenue Service filed its Response to the Nunc Pro Tunc Application.

14. Wright Killen has agreed with the Examiner appointed in the case that it will perform no further services except upon his written consent.

### Conclusions of Law

■ An agreement between Wright Killen, the Examiner, and Bank Brussels Lambert has resolved all other objections to the Nunc Pro Tunc Application. Only the IRS' objection remains. The IRS contends that Wright Killen is not entitled to be employed under 11 U.S.C. § 327 as they are not a "disinterested" party since they received payment of $32,681.45 for pre-bankruptcy work unrelated to the filing on or about October 14, 1992. However, the IRS failed to place evidence in the record to establish that this payment is a voidable preference under § 547 of the Bankruptcy Code. For all we know the payment may have been made contemporaneously with the issuance of the invoice and may have been made in accordance with industry custom and that of the parties.

Wright Killen's Disclosure of Compensation Affidavit filed in connection with this Nunc Pro Tunc Application states that Wright Killen had previously been employed by the debtor and that at the time of the filing the debtor was not indebted to Wright, Killen. Whether Wright Killen received a preferential payment is simply not determinable from the record. It is, however, undisputed that Wright Killen was not a creditor of this estate at the time this bankruptcy was filed. As such, this Court concludes that as of October 23, 1992, Wright Killen was a "disinterested" party entitled to be employed under 11 U.S.C. § 327.

■ The IRS next objects on the basis that the services performed by Wright Killen post-petition were not authorized by the Court and Wright Killen *knew it.* Further, the IRS alleges that a portion of these services were of no benefit to the estate because they went beyond the scope of the services necessary to the shut-down, i.e. they included advice and counseling on refining, operating, modeling, planning and scheduling, restart, and industry business and market conditions. The lack of benefit argument is premature. That should be taken up with regard to any request for fees that Wright Killen may make. It is inappropriate to consider now.

■ Wright Killen admits it performed work for the debtor-in-possession at a time when it knew it had not been authorized by the Court to be retained. The IRS's position is that this alone is sufficient cause to deny Wright Killen's Nunc Pro Tunc Application. The IRS cites three cases in support of its argument, *In re Yeisley,* 64 B.R. 360 (Bankr.S.D.Tex.1986); *In re Eastern Inns of New Hampshire, Inc.,* 72 B.R. 418 (Bankr.Me.1987); *In re Prime Foods of St. Croix, Inc.,* 80 B.R. 758 (D.C.V.I.1987).

The cases are not on point. In *Yeisley* the nunc pro tunc application of the auctioneer was denied by the Court because the auction was never conducted as the property was sold by private treaty. Further, the Court found that the services that were performed by the auctioneer could and should have been performed by the Trustee as part of his required duties.

In the case at hand Wright Killen performed the services for which it seeks to be retained and they were special services which the debtor-in-possession could not itself perform because it lacked the expertise necessary to do so.

In *Eastern Inns* the movant sought concurrent approval from the Court of both the nunc pro tunc application of the realtor and his request for compensation. The Court held that both must be denied as there was no benefit to the estate where the property was actually sold by a third party.

Here, there is no dispute that Wright Killen actually did the work the debtor-in-

possession requested of it. And, as previously noted, the issue of benefit is more appropriately taken up with regard to any fees that Wright Killen may request.

The last case cited by the IRS is *Prime Foods*. In that case there were two attorneys before the Court. One, as general counsel for the debtor, sought nunc pro tunc approval of his employment application and fees. The other, special counsel to the debtor, sought only nunc pro tunc approval of his fees. The Court denied the fees of the second attorney *en toto*. Although he labeled himself a bankruptcy specialist, he had never sought nor obtained Court approval of his employment. To make matters worse, he had received his legal fees from the debtor without any disclosure to the Court or any application for fees being filed. The first attorney did seek nunc pro tunc approval of his employment as attorney for the debtor. The Court denied retroactive approval of his employment because the only "extraordinary circumstance" presented by the applicant was that he believed that no application was necessary. The Court found this excuse was insufficient and did not qualify as "extraordinary".

Here, Wright Killen did know that they were required to obtain Court approval of their application for employment and they timely prepared the paperwork necessary for their application to be filed and delivered it to the debtor-in-possession's attorneys, Andrews & Kurth, who assured them that the application would be properly filed by them. Reasonably relying on these assurances, Wright Killen performed the services for which it had contracted with the Debtor. The application, however, was never filed. The reason it was never filed was due solely to the failure of Andrews & Kurth to act as they represented they would. The attorneys in *Prime Foods* were responsible for their own failure to timely file their requisite employment applications. Here, Wright Killen was not responsible for their application not being filed. Andrews and Kurth was. It would be unjust and improper to penalize Wright Killen for the failure of Andrews & Kurth to perform *their* duties.

The applicable cases in the Fifth Circuit regarding nunc pro tunc employment applications are *Matter of Triangle Chemicals*, 697 F.2d 1280 (5th Cir.1983), *In re MortgageAmerica*, 831 F.2d 97 (5th Cir. 1987), and *In re Anderson*, 936 F.2d 199 (5th Cir.1991).

*Triangle Chemicals* established that there is no per se rule that compensation must be denied regardless of benefit to the estate where the applicant had failed to obtain prior court authorization of employment. Specifically it stated that,

> "... the bankruptcy court retains equitable power in the exercise of its sound discretion, under exceptional circumstances, to grant such approval [for employment] NUNC PRO TUNC, upon proper showing, and to award compensation for all or part of the services performed by such attorney that have subsequently benefited the debtor's estate and, consequently, its creditors."

*Triangle Chemicals*, 697 F.2d at 1289.

In *MortgageAmerica* and *Anderson* the Fifth Circuit has reiterated its position in *Triangle Chemicals* that,

> "... NUNC PRO TUNC orders are allowed in bankruptcy proceedings where the judge feels that the circumstances require it, as a result of a previous oversight or omission."

*MortgageAmerica*, 831 F.2d at 99.

### Conclusion

Applying that standard to this case the Court finds that the failure of Wright Killen to obtain the necessary court approval of their employment application was due solely to the omission of debtor's counsel. If Wright Killen's application had been timely filed it would have been routinely granted. Under these circumstances equity and good conscience require approval of Wright Killen's Application *nunc pro tunc*.

An Order of even date herewith will issue authorizing Wright Killen's employment *nunc pro tunc*.